**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------ X

**WESTERN HERITAGE INSURANCE**
**COMPANY,**

        **Plaintiff,**


      - against -


**CENTURY SURETY COMPANY,**

        **Defendant.**

------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/3/14

**OPINION AND ORDER**

**13 Civ. 6907 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Western Heritage Insurance Company ("Western") brings this diversity action against Century Surety Company ("Century") in connection with a settlement paid by Western in an underlying personal injury suit ("Underlying Action"). Both Century's insured and Western's insured were named as defendants in the Underlying Action. Western seeks a declaration (1) that Century breached its obligations under the Century Commercial Lines Policy ("Century Policy"), (2) that Century must contribute toward the settlement of the Underlying Action, and (3) that Century must pay Western five hundred thousand dollars, representing Century's pro-rata share of the settlement. In addition, Western asks

1

the Court to dismiss Century's counterclaims.

Now before the Court is Western's motion for summary judgment on the grounds that certain provisions in both the Century Policy and the Western Heritage Commercial Policy ("Western Policy") require Century to contribute its pro-rata share of the settlement in the Underlying Action.[1]  Century responds that those provisions do not entitle Western to contribution because Century and Western do not share an insured.[2]  For the following reasons, Western's motion for summary judgment is DENIED.

## II.   BACKGROUND[3]

### A.   The Underlying Action

On October 24, 2006, NSBP Realty, LLC ("NSBP"), the owner of a construction project in Brooklyn, New York (the "Project") entered into a contract

---

[1]   *See* Western's Memorandum of Law in Support of Its Motion for Summary Judgment ("Western Mem.") at 5-6.

[2]   *See* Memorandum of Law in Further Support of Century's Opposition to Western's Motion for Summary Judgment ("Century Opp.") at 1-2.  At the Court's direction, Century filed an opposition and sur-reply rather than a cross-motion for summary judgment.

[3]   All material facts in this case are undisputed.  *See* Joint Statement of Undisputed Material Facts ("Joint Statement").  The parties dispute only the interpretation of the relevant provisions of the Western and Century policies.  *See CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 76 (2d Cir. 2013) (noting that the "interpretation of an insurance agreement is a question of law," which is appropriately decided by the court on summary judgment).

with Empire Builders and Developers, Inc. ("Empire").[4]  Under the contract,

Empire agreed to serve as a consultant for the Project by helping NSBP select

subcontractors.[5]  The contract also included an indemnification provision, stating:

> [NSBP] shall indemnify and hold harmless [Empire] and its
> employees from and against all claims, damages, loss or expense
> caused by any negligent or intentional act or omission of [NSBP]
> or sub-contractors, anyone directly or indirectly employed by any
> of them or anyone whose acts [make] any of the[m] liable.[6]

Upon Empire's recommendation, NSBP hired LJ Ironworks, Inc. ("LJ") as a

subcontractor for the Project.[7]

On March 10, 2008, Wilmer Castaneda, an employee of LJ, was

injured in an elevator shaft while working on construction at the Project.[8]  On April

8, 2008, Castaneda sued NSBP and Empire in New York Supreme Court.[9]  On

May 2, 2008, NSBP informed its insurer, Western, of the Underlying Action, and

---

[4]     See Joint Statement ¶¶ 1, 3.

[5]     See id. ¶ 2; 10/24/06 NSBP/Empire Contract, Exhibit ("Ex.") 1 to the
5/2/14 Declaration of Denise Marra, counsel for Western ("Marra Decl."), ¶ 2.

[6]     NSBP/Empire Contract ¶ 11.

[7]     See Joint Statement ¶ 4.

[8]     See id. ¶¶ 5, 7; Complaint ¶ 8.

[9]     See Joint Statement ¶ 6.

Western assumed the defense of NSBP.[10]  On May 6, 2008, Empire also informed

its insurer, Century, of the Underlying Action.[11]  On September 22, 2008, Empire's

defense counsel tendered Empire's defense to Western.[12]  Western accepted

Empire's tender of defense.[13]

On January 23, 2013, the parties entered mediation.[14]  On January 30,

2013, they settled all of Castaneda's claims for two million dollars.[15]  Because

NSBP and Century were entitled to contractual indemnity from LJ, LJ's insurer,

Scottsdale Insurance Company, contributed its one million dollar policy limit

toward the settlement.[16]  Western also contributed its one million dollar policy

limit toward the settlement on behalf of NSBP and Empire.[17]  Century did not

contribute anything toward the settlement.[18]  At both the mediation and the

---

[10]     *See id.* ¶ 8.

[11]     *See id.* ¶ 9.

[12]     *See id.* ¶ 10.

[13]     *See id.* ¶ 11.

[14]     *See id.* ¶ 16.

[15]     *See id.* ¶ 19.

[16]     *See id.*

[17]     *See id.*

[18]     *See id.* ¶ 21.

4

settlement, Western reserved its right to seek reimbursement from Century.[19]

## B.   The Century Policy

### 1.   Overview

In October 2007, Century issued a Commercial Lines Policy to Empire, effective October 29, 2007 to October 29, 2008.[20]  The Century Policy lists Empire as the only named insured and 2114 Bedford LLC, an unrelated non-party, as the only additional insured.[21]  Under the policy, Century agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[22]  The Century Policy is limited to one million dollars per occurrence and two million dollars in the aggregate.[23]

### 2.   Other Insurance Provision

In addition, the Century Policy contains the following Other Insurance provision:

If other valid and collectible insurance is available to the insured

---

[19]   *See id.* ¶¶ 18, 20.

[20]   *See* 10/29/07 Century Policy, Ex. 14 to Marra Decl.

[21]   *See id.*

[22]   *Id.*

[23]   *See id.*

for a loss we cover . . . our obligations are limited as follows:

    a.    This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, umbrella or on any other basis unless the other insurance is issued to the Named Insured . . . and is written explicitly to apply in excess of the Limits of Insurance . . . of this [policy].

    b.    When this insurance is excess, we will have no duty . . . to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit" . . . .

    c.    When the insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

        (1)    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

        (2)    The total of all deductible and self-insured amounts under all that other insurance.[24]

## C.    The Western Policy

### 1.    Overview

In March 2007, Western issued NSBP a Commercial Policy, which included Owners and Contractors Protective Liability.[25] The policy period ran

---

[24]    *Id.*

[25]    *See* 3/16/07 Western Policy, Ex. 15 to Marra Decl.

from March 16, 2007 to December 16, 2008.[26]  The Western Policy lists NSBP as the only named insured.[27]  Under the policy, Western agrees to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[28]  Although the Western Policy generally excludes "contractual liability," it covers liability assumed by its insured in an "insured contract."[29]  The Western Policy is limited to one million dollars per occurrence and two million dollars in the aggregate.[30]

### 2.    Other Insurance Provision

The Western Policy contains the following Other Insurance provision:

> There is no coverage provided under this policy if, at the time of the loss or damage, there is any other valid and collectible insurance which would attach if this insurance had not been effected, except that this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted.

---

[26]    *See id.*

[27]    *See id.*

[28]    *Id.*

[29]    An "insured contract" is defined as "that part of any other contract or agreement . . . under which [NSBP] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization, provided that the 'bodily injury' or 'property damage' is caused, in whole or in part, by [NSBP] or by those acting on [NSBP's] behalf." *Id.*

[30]    *See id.*

Whenever this policy becomes excess over any other valid and collectible insurance, whether primary, excess or contingent available to the Named Insured, it shall in no way obligate the Company to provide or furnish investigation, adjustment, attorneys' fees, or any other expenses in connection with the defense or handling of any claims.[31]

**3.     Supplementary Payments Provision**

Under the NSBP/Empire contract, NSBP agreed to indemnify Empire.[32] As such, the Western Policy includes a Supplementary Payments provision, which provides that Western will pay the defense costs of NSBP's contractual indemnitee — Empire — without reducing NSBP's insurance limit as long as certain conditions are met.[33] The provision states:

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

a.     The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.     This insurance applies to such liability assumed by the insured;

c.     The obligation to defend, or the cost of the defense

---

[31]     *Id.*

[32]     *See* NSBP/Empire Contract ¶ 11.

[33]     *See* Western Policy.

8

of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.  The indemnitee:

    (1)  Agrees in writing to:

        (a)  Cooperate with us in the investigation, settlement or defense of the "suit";

        (b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

        (c)  Notify any other insurer whose coverage is available to the indemnitee; and

        (d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

    (2)  Provides us with written authorization to:

        (a)  Obtain records and other information related to the "suit"; and

9

> (b)    Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments . . . [S]uch payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.[34]

## III.   LEGAL STANDARD

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[35] "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[36]

"[T]he moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle him to judgment as a

---

[34]   *Id.*

[35]   *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 692 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (other quotations omitted).

[36]   *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

matter of law."[37] "When the burden of proof at trial would fall on the non-moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim."[38] The burden then "shifts to the non[-]moving party to present specific evidence showing a genuine dispute."[39] This requires "'more than simply show[ing] that there is some metaphysical doubt as to the material facts,'"[40] and the non-moving party cannot "rely on conclusory allegations or unsubstantiated speculation."[41] "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."[42]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual

---

[37]    *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).

[38]    *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[39]    *Id.*

[40]    *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[41]    *Id.*

[42]    *Beyer v. County of Nassau*, 524 F. 3d 160, 163 (2d Cir. 2008) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

issues to be tried."[43]  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[44]  "[A] district court has the ability to grant summary judgment in favor of a party that has not moved for summary judgment."[45]  But before doing so, the district court should "determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law."[46]

## IV.  APPLICABLE LAW

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation."[47]  Courts must "give effect to the intent of

---

[43]     *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[44]     *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[45]     *23-34 94th St. Grocery Corp. v. New York City Bd. of Health*, 685 F.3d 174, 180 n.6 (2d Cir. 2012).

[46]     *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 69-70 (2d Cir. 2008) (citing *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir. 1999)).

[47]     *Olin Corp. v. American Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012).

the parties as expressed in the clear language of their contract."[48]  If the terms of a policy are unambiguous, the court should grant summary judgment on the meaning of an insurance policy.[49]  Policy terms are unambiguous where they provide "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion."[50]

## IV.  DISCUSSION

### A.  The Other Insurance Provisions in Both Policies

Western argues that it is entitled to reimbursement from Century based on the Other Insurance provisions in the Western and Century policies.[51] Both provisions state that the policies operate in "excess" of all other insurance available to the insured.[52]  Western contends that when two competing policies contain "excess" Other Insurance provisions, each provision "cancels the other

---

[48]  *Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 122 (2d Cir. 2012).

[49]  *See Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

[50]  *Olin*, 704 F.3d at 99 (citations and internal quotation marks omitted).

[51]  *See* Western Mem. at 11-15.

[52]  *See* Western Policy.

13

out."[53]   In that case, both insurers must contribute on a primary or pro-rata basis.[54]

Century responds that the Other Insurance provisions are irrelevant here because Century and Western do not share an insured.[55]   Under New York law, Other Insurance provisions create a co-insurance situation only where the two insurers insure the same insured for the same risk.[56]   Century asserts that Empire is insured only by Century, and NSBP is insured only by Western.[57]   Because Empire is not a Named Insured, Additional Insured, or otherwise an insured under the Western Policy, the Other Insurance provisions do not require Century to

---

[53]   Western Mem. at 11.

[54]   *See id.* (citing *Macari v. Nationwide Mut. Ins. Co.*, 745 N.Y.S.2d 191,193 (2d Dep't 2002) ("[S]ince both insurance policies cover the same risk, and both contain an 'other insurance' provision constituting a standard 'excess insurance' clause, the clauses negate each other, and each insurance carrier must contribute its proportionate share of the loss [] in the underlying action."); *Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 855 N.Y.S.2d 459, 471-72 (1st Dep't 2008); *Federal Ins. Co. v. Atlantic Nat. Ins. Co.*, 25 N.Y.2d 71, 75-76 (1969)).

[55]   *See* Century Opp. at 1-2.

[56]   *See Great N. Ins. Co. v. Mount Vernon Fire Ins. Co.*, 92 N.Y.2d 682, 686-87 (1999); *Pennsylvania Mfrs. Ass'n Ins. Co. v. Liberty Mut. Ins. Co.*, 837 N.Y.S.2d 445, 446 (4th Dep't 2007) ("[W]here insurance policies provide coverage for the same interest and against the same risk, concurrent coverage exists and two or more primary insurers will be held to be coinsurers."); *Medical Malpractice Ins. Ass'n. v. Medical Liability Mut. Ins. Co.*, 450 N.Y.S.2d 191, 193 (1st Dept. 1982) (holding that an insurer of one policy may enforce a right of contribution against another insurer only when the insurance provided by each covers "the same interest and against the same risk").

[57]   *See* Century Opp. at 2.

reimburse Western.[58]

Yet, Western contends that the Other Insurance provisions determine priority of coverage for Empire regardless of whether Western and Century are co-insurers.[59] However, the Court of Appeals has held that the Other Insurance provisions apply only "where two or more insurance policies cover the same risk in the name of, or for the benefit of, *the same person.*"[60] Likewise, in *Liberty Mutual Insurance v. Hartford Insurance Company of Midwest* — a case cited by Western, the court interpreted the Other Insurance provisions of two insurance policies only "to the extent that the policies cover the same loss and the same insureds . . . ."[61] Under the unambiguous terms of the policies, Western insures only NSBP, and Empire insures only Century.[62] Moreover, each Other Insurance provision limits

---

[58]     *See id.* at 5.

[59]     *See* Western's Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment ("Western Reply") at 3.

[60]     *Great N. Ins. Co.*, 92 N.Y.2d at 686-87 (emphasis added).

[61]     811 N.Y.S.2d 716, 721 (2d Dep't 2006).  Western also relies heavily on *National Union Fire Insurance Company of Pittsburgh v. Hartford Insurance Company of the Midwest*, which held that a subcontractor's insurer, National Union, was entitled to contribution from a general contractor's insurer, Hartford, based on the Other Insurance provisions in the policies.  677 N.Y.S.2d 105, 111 (1st Dep't 1998)*, aff'd,* 93 N.Y.2d 983 (1999).  But there, the National Union and Hartford policies both named the general contractor as an insured.  *See id.* at 107.

[62]     Western does not dispute the fact that Empire is not named as an insured under its policy.

15

coverage to the policy's insured.  The Western Policy provides excess coverage only when there is no other "valid and collectible insurance . . . available *to the Named Insured*."[63]  Similarly, the Century Policy provides excess coverage only when no other "valid and collectible insurance is available *to the insured* . . . ."[64] Thus, because Western and Century are not co-insurers, Western is not entitled to contribution for its settlement payment.

### B.    Supplementary Payments Provision in the Western Policy

Next, Western argues that the Supplementary Payments provision in the Western Policy "dictates the scope of coverage" available to Empire as NSBP's "contractual indemnitee."[65]  Western asserts that the Supplementary Payments provision "specifically contemplates contribution from other insurance available to any contractual indemnitee as part of its defense."[66]

Based on this provision, quoted in full above,[67] Western asserts that Empire was required to coordinate its available insurance with Century as a

---

[63]    Western Policy (emphasis added).

[64]    Century Policy (emphasis added).

[65]    Western Mem. at 21.

[66]    *Id.*

[67]    *See supra* note 34 and accompanying text.

"precondition of [receiving] coverage" from Western.[68]  Although Western paid

the settlement on Empire's behalf, Empire failed to fulfill its obligation by

coordinating with Century.[69]  As such, Western contends it is entitled to

reimbursement from Century.[70]

　　　　　However, the plain language of the Supplementary Payments

provision belies Western's argument.  The Supplementary Payments provision

does not provide liability coverage to Empire or transform Empire into an

"insured" under the Western policy.  Instead, if all of the conditions of the

provision are met, Western will pay the defense costs of a contractual indemnitee

— Empire — as a "Supplementary Payment[]," without "reduc[ing] the limits of

insurance."[71]  If any of the conditions are not met, the provision no longer applies.

Western may still pay Empire's defense costs, but it will reduce the limits of

insurance available to NSBP.[72]

　　　　　Here, Western assumed Empire's defense costs without attempting to

---

[68]　　Western Mem. at 24.

[69]　　*See id.*

[70]　　*See id.*

[71]　　Western Policy.

[72]　　This is consistent with the scope of the Western Policy, which covers
NSBP's contractual liability under its "insured contracts," such as the
NSBP/Western contract. *See id.*

enforce the conditions of the provision.  Specifically, it defended Empire without first requiring any written agreement from Empire.  Empire never agreed in writing that it would  "[c]ooperate with [Western] with respect to coordinating other applicable insurance available to [it]."[73]

Nevertheless, Western contends that "because [it made] substantial payments . . . under the Western Heritage Policy, on Empire's behalf, it cannot logically be argued that Empire is not bound by the very provisions under which such payments have been made."[74]  But "[a]bsent a contractual relationship there can be no contractual remedy."[75]  Empire is not Western's insured and has no obligations under the Supplementary Payments provision or the Western Policy in general.  Moreover, Western failed to create a contractual relationship with Empire because it chose to defend Empire without obtaining Empire's written agreement. As such, Western cannot rely on the Supplementary Payments provision to seek contribution from Century.

### C.    The NSBP/Empire Contract

---

[73]     *Id.* (emphasis added).

[74]     Western Reply at 6.

[75]     *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, N.A.*, 747 F.3d 44, 49 (2d Cir. 2014) (citing *Suffolk Cnty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984)).

Finally, Western contends that even though it assumed Empire's defense under the NSBP/Empire contract, it had no obligation to pay Empire's liability damages.[76]  While Western did, in fact, pay Empire's portion of the settlement, it maintains that it has a right to reimbursement from Century — a right it reserved at mediation and settlement.[77]  Specifically, Western argues that it may still "challeng[e] the validity of [the NSBP/Empire contract] in a subsequent action, nor would it necessarily be required to provide coverage to [NSBP], should NSBP ultimately be liable to Empire for contractual indemnity."[78]

As an initial matter, the NSBP/Empire contract is an "insured contract," and the Western Policy covers liability that NSBP assumes in an "insured contract."[79]  As such, Western paid the full settlement amount because the Western Policy covers (1) NSBP's liability for Castaneda's injuries, and (2) NSBP's indemnification of Empire under the "insured contract."[80]  It is true that Western could have refused to pay Empire's portion of the settlement.  But doing so would be futile because Empire could simply enforce the indemnification

---

[76]  *See* Western Reply at 7-8.

[77]  *See* Joint Statement ¶¶ 18, 20.

[78]  Western Reply at 8.

[79]  Western Policy.

[80]  *See id.*

19

provision of the NSBP/Empire contract.  Western, on behalf of NSBP, would then

be required to indemnify Empire from all defense costs and settlement expenses.[81]

Finally, by accepting Empire's tender of its defense, Western waived

its right to dispute the validity or enforceability of the NSBP/Empire contract.

Under the contract, NSBP agrees to indemnify Empire "from and against all

claims, damages, loss, or expense caused by any negligent or intentional act or

omission of the owner or sub-contractors . . . ."[82]  The contract indemnifies Empire

for both defense expenses and liability damages.  In assuming Empire's defense,

Western acknowledged both the validity of the contract and NSBP's obligation to

indemnify Empire for "*all* claims, damages, loss, or expense. . . ."[83]  Western may

not now claim that the contract is invalid.  Thus, Western is not entitled to

reimbursement from Century.

## VI.   CONCLUSION

---

[81]      *See* NSBP/Empire Contract ¶ 11.

[82]      *Id.*

[83]      *Id.* (emphasis added).  To the extent that Western claims that it
voluntarily incurred Empire's defense costs and settlement payment without regard
to the NSBP/Empire contract, any recovery is barred by the voluntary payment
doctrine. *See Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100
N.Y.2d 525, 526 (2003) (holding that the voluntary payment doctrine "bars
recovery of payments voluntarily made with full knowledge of the facts, and in the
absence of fraud or mistake of material fact or law").

For the foregoing reasons, Western's motion for summary judgment is DENIED.  Because there are no fact issues to be tried, Century is entitled to summary judgment as a matter of law.  As such, Century has no obligation to reimburse Western for any money that Western paid in the settlement of the Underlying Action. The Clerk of the Court is directed to close this motion [Docket No. 23] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 3, 2014

21

-Appearances-

**For Plaintiff:**

Andrew Hal Lesnever, Esq.
Carroll McNulty & Kull LLC
120 Mountain View Blvd.
Basking Ridge, NJ 07920
(908) 848-1236

**For Defendant:**

Dan David Kohane, Esq.
Cassandra Anne Kazukenus, Esq.
Hurwitz & Fine, P.C
1300 Liberty Building
Buffalo, NY 14202
(716) 849-8900